Thank you, and good afternoon, everyone. Good morning, Judge Aldersdorf. May it please the Court, David McComb for Appellant Gloria Santiago. Let me just call the case for the record. Sir, Santiago v. Warminster Township and your appearance again, sir. David McComb. McComb, thank you. You're requesting rebuttal? Yes, five minutes, Your Honor. Five minutes is fine. Let's go ahead. Before I start, there are two preliminary points I'd like to address. One has to do with the supplemental briefing that was requested by the Court and submitted in September. In our supplemental brief, there's a footnote in which we make a reference to the Pennsylvania Code referring to townships of the first class. After further review and consultation with counsel for Warminster, it appears that Warminster is a township of the second class, so I apologize for that and would submit that their statement of the law is the correct one. The definition of a township of the first or second class is dependent on a number of things, including population, and sometimes they may change or vary over time. But having said that, I don't believe that anything in the recitation of law by either party in the supplemental brief addressing the code provisions addresses anything that says that Chief Murphy was not a final decision maker. The test... Let me ask you about that, because in your supplemental brief, you say, you know, this really was a mistake by the District Court because it's... It is the case that under Proprotnick, this is a question of law, that is, who's the final decision maker. But then you go on at page five and say, even if the township or board of legal authority over Chief Murphy, any suggestion that it supervise them with respect to tactical operations is inconsistent with the record and with common sense. Isn't that an appeal to take us back to the facts? When you seem to be acknowledging that under Proprotnick, we're not supposed to go to the facts. It's what's on the books. What's the law say? It is, but in lots of issues that are legal determination, some background facts may inform the court's decision as to how to apply the law. Well, that would be true if it were a mixed question of law and fact, but here the Supreme Court has said, this is just a question of law. Look at what the state law says, and if it says the Board of Supervisors is the final authority, that's that, right? Isn't that the state of the law? That is what the court has written, that in application, this court, for example, McGreevy v. Stroop, looked at an application for, an application of Pennsylvania law with respect to a school superintendent, and what they, it wasn't purely a question of law. They had to interpret the law, and they concluded in that case that even though the superintendent, that an employee who wanted to challenge his or her performance evaluation by the superintendent had the right to appeal to the school board as a matter of law, he was still the policymaker because there's no requirement that that appeal be taken. I guess that most of you would say, what, that maybe there was some ambiguity about who was the decision-maker in that case? No, I don't think there's any ambiguity here. I think as a matter of law, you can say that the chief of police is the person with final decision-making authority. The test would be under... Help me out with that because that's, that's precisely the point I'm trying to get you to address. They, your, your colleagues on the other side have pointed to state law that says, it's, it's the Board of Supervisors, Township of the Secondary. It's the Board of Supervisors that's got the responsibility. How are they wrong? The Board of Supervisors does not direct that. Sir, before you answer Judge Jordan's question, I'd like you to help me out. I've examined the complaint filed, and there was no affirmment that the chief of police was a policymaker, or an affirmant of what that policy was. Now, if that is so, isn't all of this discussion moot, that it's not properly before us? No, I don't think there's any requirement that the word policymaker is talismanic and must appear in the pleading. I think that, that the issue... At least you have to say that the chief was a policymaker, and you didn't. Well, I think a fair reading of the complaint, Judge Aldersart, is that the decision, the, the implementation, the planning, the execution of the, of the arrest and the detainment, the detention of Gloria Santiago, it was done, it was done by the chief, and the chief planned it. The chief planned it. It was the, it was the head of the task force and planned the operations. Of course, the consequence, if we, of our disagreeing with you, is that Warminster is off the hook. Yes, yes. The, the basis for liability of Warminster would have been under the third prong of Manal, city of Pembroke, that, that he was a, a final decision maker. And again, I, the fact that there may be people, a township supervisor, a township board of supervisors, that could ultimately remove the chief of police does not mean that those entities are the final decision maker with respect to tactical decisions. I would suggest that that, that argument sort of flies in the fence of common, common sense, that when the police convenes a task force and, and makes a tactical decision how to make an arrest, detain somebody, or, or implement assets on the police force, there's no process by which it's brought to the township supervisor, the, the township board. There's no Pennsylvania statute or, or set of regulations that explicitly say that a chief of police has, is a policy maker? I was unable to find something that says that in, in sort of language that tracks McGreevy or Pembar or something with respect to that prong of liability under, under Manal. I think, though, as a, I think the court has to look at it in terms of the authority exercised by the, the chief of police and the circumstances of the case. And, and simply to say that, you know, the fact that he could be removed by somebody, you know, for non-performance of his job doesn't mean that they're actually supervising him with respect to the performance of his duties. And again, the, the test from Pembar was whether his acts or edicts may fairly be said to represent official policy. I think the key is fairly said to represent. It may not be announced in some statute or, or code or something to that effect. The second preliminary point I'd like to make is that this is obviously an appeal. Let me, let me just follow through. In our McTernan case, it said that the claimant must identify a custom or policy and specify what exactly that custom or policy was. Where's that in your complaint? It's not in there, Judge Aldersert, because the custom or policy is one of, one of many ways, three ways, really, that Minnell says that an action may be attributable to a municipality for purposes of affixing liability. It can be an official act. It can be an ordinance or a pronouncement or something done by a township board or a municipal entity. It can be an unofficial policy or failure to take steps to address a situation. Or, as Pembar points out, it can be one act by a final decision maker if, in fact, it represents, and again, McGreevy, the test was whether that official has final, unreviewable discretion to take action or make a decision. Right. That's a very good point. Final and unreviewable. So, 53 Pennsylvania Statute 66902 says the Board of Supervisors, as the organization and supervision of police officers, is in their power, if I have understood the statute correctly. That, that's what the state law says, that supervisors have power over the organization and supervision of the police officers. If that's the law, how can you assert that when it comes to policymaking, the chief has final and unreviewable authority? We're not talking about policymaking. I think that's one of the misconceptions about what Minnell holds. Minnell holds it can be policy, official, it could be policy, unofficial, or it can be the act of a decision maker who has, who really, whose edicts and acts may fairly be said to represent official policy. You basically want us to look at this case and what happened here. Well, there are, there are cases in which the single act. This is not, in other words, this is not a pattern. No, and I think that, with all fairness to Judge Delisle, that may have been one of the issues that was confusing. It's, obviously, the pleadings below are not a model of clarity, and in some respects, we have motions to dismiss filed after motions for summary judgment were briefed. I guess I'll, I'll confess to some confusion, too, because I'm not, I'm not sure I understand what you're looking to. I mean, if the Supreme Court tells us we have to look to state law to figure out who the final decision maker is, and the statute, the only statute that I've been able to locate that indicates to me who the final decision maker is with respect to the organization and supervision of the police officers, and supervision of the police department in a township like Warmester is, the Board of Supervisors, what is it you're looking at to show that this police chief had final and unreviewable authority over the stuff he was doing, as a matter of state law? It may be a matter of common law. It may not appear in the code anywhere, but as a, I think if we went back and did depositions, and curiously enough, there were depositions taken in the case because there was a summary judgment motion filed, at that point, Santiago responded to it. That's when I got into the case. I got into the case about a year into it, but there had been depositions and so forth, and at that point, the Third Amendment complaint was filed, which asserted claims against the individuals. So, there is, there is some body of, of, of evidence that was before the district court as of the time of the resolution of the Third Amendment complaint. You had a second point that you wanted to address? Thank you. The, the second point was that it's obviously, it's an appeal from a, a motion to dismiss. So, lots of the issues that have been raised in the appellee's brief are things that the district court didn't pass upon. That, for example, the, there's been no resolution of factual matters that go to qualified immunity. There's an argument about the untimeliness of the motion for leave to amend, which Judge DelZell addressed in our favor. How about if we add a little bit more time to your argument, because you're really, there's really a few other things that you haven't addressed. That would, that would be fine. The, the pleading standards under Iqbal and so forth with regard to the three individuals. Can we add five minutes and then we'll give the. Thank you, Your Honor. Five minutes or so. Thank you. One, one of the difficulties is, is getting some clarity out of what it was Judge DelZell was talking about. Because you have, obviously the requirement under Iqbal and, and Twombly to plead with, with, with some degree of particularity. There's no, obviously there's, there's, the Supreme Court is intervening in this. And it was unclear, I think, from Judge DelZell's opinion, whether he thought there was a lack of particularity under Twombly. Or whether he was actually saying that it has to, you have to plead facts. I think as to pleading facts, I think he's wrong as a matter of law. We did, in our response to the motion for summary judgment, cite Andrews versus City of Philadelphia with a parenthetical saying that the, the question of decision making authority is a matter of state law. But what did you plead? You have three, three defendants. You have the Chief of, Murphy, Springfield, and Connolly. And, and Con, and Connolly. Yes. There were, there were originally a lot. And, and, and as I said, it's. But let's, let's focus on the three that you. Okay. The other ones are all out of it, right? Well, they're all out. I think that the, the one issue, and I'll, I'll, and I don't mean to belabor the point, was there was one issue with respect to an unlawful touching of Ms. Santiago when she was, when she was handcuffed. And it's, it's pled in the third amendment complaint. And I think Judge DelZell thought that was the primary basis. And, and on that, there may have been a respondeant superior issue, but it's now out of the case. Right. So, it's done. The only thing we're talking about in the way of individual defendants is those three defendants as to whom you argue some. You say you're arguing supervisory liability, right? Right. With. All three are supervisory liability? Yes. And all three were there. And I, and, and the, the district court's opinion said that we pleaded on a respondeant superior basis. With all due respect, it, it appears they accepted the, the argument made by defendants who were pleading on respondeant superior. But if you look at, if you look at the record, particularly the response to the motion for summary judgment, which preceded the briefing on the motion to dismiss the third amendment complaint, it's clear that we addressed respondeant superior. We acknowledge in response that it's a basic proposition that you don't get liability under respondeant superior. And we were, we were proceeding based on, with, with respect to Murphy, his implementation, planning, but with respect to Springfield and Donnelly, the fact that they were there and present, which we believe under the Rody versus Dulles support case. I have a question about whether you actually pled that they were present, but leaving that aside for a minute. Assume that we, for discussion, that we, we said, okay, they tried to plead supervisory liability here. What is it that takes your case and distinguishes it from Iqbal? And Iqbal, the petitioner, excuse me, the plaintiff below, let's call him that, we'll call him the plaintiff, was arguing that, hey, the attorney general and the director of the FBI, they, they knew and told everybody, do these unlawful things. And the court said, that's not enough. You gotta, you gotta give us some reason to make it plausible that in, that in fact, they, they encouraged people to do something unlawful. What, why, how is your case different from that? It, it's different because there is, there is first hand involvement with respect to Chief Murphy, who actually sat down and, and planned the, this process by which the, the call out process, the fact that people would be detained and so forth. Which is very different than a suit against the attorney general or the director of the FBI, which would be, which- Were you able to connect the, were you able to connect his involvement with the constitutional claim that is made by Santiago? Yes, but I, and, and that issue was never addressed. The constitutional claim by Santiago is premised on, basically, the Supreme Court's ruling in Mueller versus Mina, which says that a bystander, during the implementation of a search warrant or an arrest warrant, and it's unanimous decision reversing the Ninth Circuit, which had upheld a verdict in And the test is whether or not a, a bystander who is under no suspicion can be detained if, to prevent the risk of flight, to prevent, you know, with respect to safety of officers and others at the, at the scene, and to prevent disruption. So your, your claim is, and has to be, I guess, that Murphy said you, you get everybody out of the house, no matter whether they're a target or not. You put a gun on them, you make them put their hands up, you handcuff them. And, and, and that's the factual foundation for saying he's got supervisory liability, is that right? Not precisely, because what, what took place was there, it was, it was fairly random. She came out, Gloria Santiago came out, it's, it's, it's morning, it's dawn. She comes out, she's- If it was random, how, how do you- Well, no, I, I, I miss, I didn't mean random. It was the fact she was the only one who was handcuffed. She did not present a risk under Mueller v. Meaner of disrupting the operations, a threat of- Cuz, cuz her daughter and her granddaughter weren't cuffed, right? No, they weren't. They were not cuffed. So, if that's the case, if, how do you take this from officers acting at the scene? And let's assume for the sake of discussion, we would agree with you that cuffing grandma didn't make a whole lot of sense. How, how does that turn into, I mean, you don't even have an allegation that Chief Murphy said, get grandma. I mean, there's nothing in there to imply that he was targeting her. But again, it's not just the detention, it's the fact that having taken Mrs. Santiago into custody. She doesn't speak English, she had an automatic weapon. Can you relate that to the plan, to the plan or policy that you claim that Chief Murphy had? Again, well, it's, when we talk about the, it was the plan for the operation. Yes, it's, it's in his- In the operation, the, in the operation plan, did he say, everyone who resides in the house or happens to be a bystander has to be handcuffed? Yeah, it's, it's, it's in the summary judgment record. That was in front of Judge Delzell. I mean, he, he was deposed and he said, we'll handcuff everybody and- Is that your strongest link between Chief Murphy's plan and, and the harm that Santiago is claiming? Well, again, with, we're on a motion to dismiss. Right. We have, we have plausibility under Iqbal, and we have supervisor liability to, to affix this to Warminster. So, I would submit that whether or not on the merits there may be arguments to be raised, they're not before the panel, and they were never in front of Judge Delzell on the motions to dismiss. Precisely. I'm glad you said that. So, let's focus on a motion to dismiss and what was pled. If you have to go into what's plausible, how is it, how do you get to plausibility from the assertion that he, he ordered everybody to, to be put in cuffs? I mean, I, I guess I'm trying to figure out, I, you, in some form or fashion, don't you have to provide us with the basis for saying, well, that's why we should believe that he ordered it and not that it just happened on the scene? Again, it's, it's, it's, it's his deposition testimony that appears in the summary judgment record. I'm getting whiplash, because on the one hand, you tell us, don't think about this in terms of summary judgment. It's a motion to dismiss. And then when I ask you, what have you pled? You say, look at the summary judgment record. You gotta help me out. Okay. How much is it? Okay. It's a motion to dismiss. Okay, so. You're not looking at the summary judgment record, right? Yes, the summary judgment record doesn't necessarily, doesn't relate. But again, in terms of what was, what was in the record generally. I, I, I would suggest that, that we pled enough under Twombly. If you look at the, if you, the, the test is what. What did you plead with regard to Murphy? That he, that he, he planned it. He implemented the operation. And it's, it's, it's set out in our brief. It's set out in the third minute complaint. It's, it's fairly, it's fairly similar to the allegations. All right, the specific harm here is that she was handcuffed for half an hour and suffered a heart attack. Well, it's, it's, it's that she, she was handcuffed. As a result of a violation of her constitutional right. Yes, and the test is whether it was appropriate, was it necessary to handcuff her and having taken her and putting her away from her family on the ground with handcuffs after having an automatic rifle. Did Chief Murphy's plan specifically say that you are, you should handcuff this woman in the manner that she was handcuffed? The, the, yes. And, and it, it, it didn't end up, it's in the summary judgment record. It doesn't end up in the, in the third amendment complaint. With all due respect, I would submit that Twombly doesn't require that level of detail. Well, in that third, I mean, now this is your fourth shot at this. Third amended complaint, did not allege that this harm, this constitutional violation was a result of Chief Murphy's plan? Yes, that, that is there, but not with the level of detail that Judge Jordan was just asking about. Well, let, let me share, this is what I think you have said specifically. You said, this early morning surround and call out operation specifically sought to have all occupants exit the plaintiff's home one at a time, hands raised under threat of fire, padded down for weapons, and handcuffed until the home had been cleared and searched. That is the entirety of your assertion about what Murphy ordered, right? Well, it's, it's set out in paragraph 21 of the third amendment complaint. Okay. Yeah. Yeah. Judge Aldous, sir, I think you, you, you're starting to say something, sir? Well, I'm just referring. Yeah, it's 21. Okay. So 21, and that's all. And I also would, on page 23 of the opinion, it says, while it may be true that Chief Murphy is a final policy maker, Santiago does not make this allegation in her third amended complaint. And we will not assume facts that Santiago fails to plead. And, and I, I believe that Judge DelZell's statement that the plea, you know, there had to be factual pleading is inconsistent with PEMBAR, which says that his, his position as a policy maker is a question of law. If the motion to dismiss didn't raise the question of he wasn't a policy maker as a question of law, it's unfair to suggest that we were negligent in not responding. Well then, where, where, where, where is the language in the complaint saying that he was the policy maker? Judge Aldous, sir, the, the word policy maker does not appear in the complaint. Okay. But I think a fair reading of the complaint, and again, the test under is, is, is the, the inferences, the language of the complaint. You basically say he set up the whole plan that resulted in her being handcuffed. Yes, and with, particularly without a contingency plan to watch if someone is being handcuffed and removed, and they don't speak English, and she's, she's upset and crying on the ground. Someone should have paid attention to her before she had a heart attack. Again, she, she did nothing wrong. She's not, you know, there was no reason for her to be handcuffed. How about Donnelly and Springfield? What is your allegation? That they carried out the plan? They were there. They were there. They were, they were supervising. They were on the scene. I would submit that they, it's not responding as superior. They, they were the tactical people on scene who should have been paying attention to who was being detained and handcuffed and, and, and what, what basis there was for doing so. It's your, it sounds like your basis for liability there is inaction. It's, it may be a semantic thing, but inaction in the face of, and, and if it was someone handcuffed and struggling and upset, probably maybe acquiescence. And I think acquiescence can be a basis for liability under the Rody case. Okay. Well, just going back to, again, the language of the complaint, she alleged only that the three officers supervised or were in charge while her rights were violated. She did not allege that the officers themselves were the violators. That, that's correct, Judge Alder, sir. The actual, the three were not the ones who put the cuffs on her. Right, okay. Thank, thank you and thank you for the additional time. Mr. McCall, thank you. We'll get you back on rebuttal. Mr. Boyle? I think it's afternoon in California now as well. So good afternoon everyone. Christopher Boyle for the Appalese. Chief Murphy, Lieutenant Donnelly, and Mr. Springfield, who is no longer employed by the Warminster Police Department. We're going to give you a little extra time, Mr. Boyle, if you need it. I may be good with the seven minutes, but Mr. Belwar has a tendency to run long, so. If you do, that's. I'll pass the time on to him. A few of the things that came out in the arguments of appellant here today were a little strange to me in that, number one, a claim of supervisory liability. In the appellate record at 77 and 78, the supervisory liability claims were dismissed, unopposed, by the appellants at the time the plaintiff in this case. So there are no supervisory liability claims remaining. Where's that in the record? It is at A77 and A78. Following a previous iteration of the complaint, a motion to dismiss was filed by Warminster Township. At the time, I was not involved at that point, as there were no individual defendants named. And that called for dismissal of the supervisory liability claims. Plaintiff never answered. And the motion was granted as unopposed. So there, there are no supervisory liability claims before the district court. And, or before this court at this time. Plaintiff's claim now, or appellant's claim now is individual liability on the part of these three. Direct involvement. Direct involvement. And I would submit that nothing submitted in briefs in the third amendment complaint or in argument today. First and foremost, as to Springfield and Donnelly. There has been no allegation of direct involvement. What's wrong with the the allegation that Judge Jordan read? Which is paragraph 21. He Chief Murphy ordered, approved the plan, executed the arrest warrants. He's the one who devised the surround and call out. And that plan is the program is the one that resulted in Santiago's arrest, handcuffing, and further injury. Well, essentially, that's asking for supervisory liability. That someone else committed a constitutional violation, according to a surround and call out plan, to arrest two violent armed felons. Well, it's, it's Chief Murphy's plan. He's the one who put it in, in, into play. Isn't he the one who ordered that it be carried out? There's nothing in the third amendment complaint that would suggest that Chief Murphy ordered a constitutional violation. Chief Murphy ordered that these arrest warrants be served and that they be served in a safe, reasonable, and lawful manner. There's nothing in the third amendment complaint that would say otherwise. And the suggestion now that we should. When you say there's nothing that would say otherwise, the third amendment complaint, I just read it in the record. According to their allegation, he ordered to take everyone out of the house, cuff them, you know, put a gun on them and cuff them. Until the home had been. Until the house is cleared. So, that is, if the, if the home is full of daycare students or it's an el, you know, elderly person like this lady, I mean, you're certainly not suggesting that, that Ms. Santiago needed to be cuffed and put under a, a gun because she was somehow a problem or a threat, are you? I'm suggesting that third circuit authority on this point is that officers are entitled to detain persons found at the scene for a reasonable amount of time, that they need to dispel their suspicions as to these people as quickly as possible. And. That doesn't answer the question of excessive force at all. I mean, the question of excessive force isn't, can you detain people? It's, how are you going to detain them? I mean, if I, if you, if you hit her with a blackjack, you've detained her. That's maybe one end of the extreme. And if you say, would you please stay right here for a moment, ma'am? That's another end of the extreme. The allegation, the complaint is that the police chief said everybody in the house, even though we're only going after one person, everybody in the house gets a gun on them and gets cuffed. That's the allegation in the complaint, right? I don't think it's as specific as that. The language was read into the record. I have it in front of me here as well, your honor. Have all occupants. Hands, hands raised under threat of fire, meaning under threat of being shot. Right. And everyone is to come out with their hands in the air. Under threat of fire. Right. Patted down for weapons and handcuffed until the home is cleared and searched. So I, I guess what I'm suggesting to you is I don't think you're going to get very far with the statement that the complaint says nothing to indicate excessive force. I mean, on, on its face, if we look at that, doesn't that tell us that, at least according to the allegation, the officers were told, no matter who's in the house, put them under threat of fire, pat them down and cuff them. I think it's once removed from the actions at the scene and that it's a claim for supervisory liability more so than for direct involvement. It's saying that there's a, a plan and that the execution of that plan results in a constitutional violation, that another level removed can be held liable for that. That's a claim for supervisory liability, or for responding at superior liability. What if we take this at face value and say, the allegation is, these were Murphy's words to his officers. No matter, take everybody out of the house, put them under a gun, cuff them. If we take those allegations as true, is it supervisory liability or is that strictly or is that a statement that he was directly involved in setting up a a constitutional violation? I would say it would have to be execution of the plan that resulted in the constitutional violation and that the plan called for a constitutional violation. That the chief never called for that at this point. If, if we took this as a quote, which is not the way it appeared in the third amendment complaint, that's putting a different meaning on it. And I, I don't think that that's the only interpretation of it. And that the Iqbal decision requires a little bit more in the way of fleshing out that claim to make it rise to the level. That is how it appears in the third amendment complaint, isn't it? Just how I read it? That is how it appears, but it's not a quote from the chief. Well, right now we're talking about what's, we're talking about a motion to dismiss, right? Right. And what's alleged and whether it's sufficient to state a claim. So if we take that at face value, as we need to at least for discussion purposes. Okay. Our only question becomes, is it plausible what's being, have they plausibly put forth a claim, right? That would be the question, yes. Okay. So, I'm having a little trouble with your assertion that this is only supervised reliability. Help me out with the, I hear your opponent saying, no, it's a, it's, it's involvement in the sense that they did exactly, he told them what to do and they did it. So, how is that, how is that not direct involvement then? Well, they also plead that he's not present when this plan is executed. And I think it's adding a layer in between the chief and the people who are actually at the scene executing the arrest warrant on the appellant's grandson. If he'd, if he'd said, if Chief Murphy had said, shoot the people as they come out the door, would he have constitutional liability or would you say if they actually carried out the order? No, he, you know, that was just, that's only supervisory. It's not a direct involvement. Well, I would say at that point we're asking for the trial court to again interpret what was said, what was done, and whether a police officer in the position of the officers who actually carried out the warrant would commit a constitutional violation because ordered, even, even knowing that that was illegal. And I don't think that was alleged here. The, the claim until such time as was apparent, the supervisory liability claim had been dismissed without opposition, was that the officers on the scene had committed a constitutional violation. It wasn't until such time as that was unsuccessful and we're up to a fourth iteration of the complaint, that there's an allegation that it was a direct order from the chief. As far as Springfield and Murph, and Donnelly are concerned, I don't think we even go that far. In fact, the language from the paragraphs immediately following were that Lieutenant Springfield permitted the use of excessive force. And that Lieutenant Donnelly helped execute the operation, but that the plan was inherently flawed because it permitted unlawful actions, not that it directed them. And I see my time is up. I have a question. In, in making a judgment about the plausibility of the allegation, are we permitted to look at the previous iterations of the complaint? I would say that they're part of the record and the trial court was, was entitled to. Thanks very much, Mr. Warren. Thank you. Mr. Belwar. Good afternoon. Andrew Belwar on behalf of Warminster Township. Your Honor, there has been one constant throughout this case, and the appellant in this case. And I realize counsel is new to the case and is saddled with a certain record. However, that record does not provide for a valid complaint under Iqbal. We ask that the court affirm the decision of the district court in this case. Among other reasons, on behalf of Warminster Township, is because the the chief is, Chief Murphy, or any of the other two, are policy makers. That word is simply missing, and it is more than simply a vacuous term that has to be added to a complaint. Do they have to allege policy maker, or do they have, or is it sufficient for them to say final decision maker, or some, or to say words that bear the same import as final decision maker? There, I don't think that there has to be the use of the term policy maker. Decision maker could, I would think, apply as well. However, I think the key word is final. Every officer out on the street is a decision maker. And under some of the scenarios presented, Murphy was a decision maker. However, for purposes of Warminster Township, is he a final decision maker? And clearly, under the third amended complaint, it is not pledged. Under Pennsylvania law, isn't he authorized to make policy for a police department? He is not. And to carry out police policies? He is not. There is no specific reference that I'm aware of that gives him that final decision making power. Rather, under the second class township code, or Mr. Township being a township of the second class, that's reserved to the elected officials, the board of supervisors. They have the ability, as does the Pennsylvania legislature, to change that. But the board of supervisors doesn't formulate policies such as the surround and call out that was involved in this case. Just as they do not enact a policy as regards to how to conduct a car stop. The officers conduct those types of operations. If, though, one wants to reach up and extend liability to a municipality, there has to be decision making by that state authorized final decision maker. In this case, the board of supervisors under Pennsylvania code. Judge Allister has a question. Yes, sir. No, I have not. Oh, sorry. Well, I do have one, if I could take it to something, and perhaps I should have asked this to your colleague, Mr. Boyle, in the first instance. But I was curious about the statute of limitations argument that was being put forward. And the district court had said that it was prepared to accept that the three supervisors should have known about the case based on information given to the township. And of course, they're contesting that here. My question to you is, is it the case that they had to be, well, that they had to know that they were the ones that were intended to be sued in order for there to be relation back? And if you're the wrong person to ask, just say, pass. That's fine. I hate to do this to my co-counsel, but if I may defer to him on that issue, because it involves the individuals. Right. As the court pointed out, I think Judge Jordan, you pointed out, there have been some changes as regards to the theory of liability that's at issue here. And I draw the court's attention to paragraph 7 of the third amended complaint, where, interestingly, it's alleged that Murphy, Donnelly, and others were acting under official policy of Warminster Township, which it seems to be at odds with the theory presented, both in the context of policymaking and then the theory presented here today. And I couple that with the reference made by co-counsel to page A77, where, in response to the second amended complaint, a motion to dismiss was filed, and at A77, the court disposed of the municipal liability claim from the perspective of oversight failure to supervise or train the official. So that seems to have gone out the window, but like a bad penny, it keeps showing up. And sure enough, it shows up here in the third amended complaint, which, by the way, just to complete the thought that was presented by opposing counsel, that third amended complaint came as a result of we had the second amended complaint conducted discovery, and the docket will show that eventually a motion for summary judgment was filed. In response to that, that is when Santiago moved for leave to file this third amended complaint. So interestingly, they had all the discovery at their beck and call, and yet we have one thin paragraph that really references what happened there. OK. The PEMBAR case says that authority can be delegated, right? Yes, it can be. All right. So does the title police chief carry some kind of an implicit delegation of what's effectively final decision-making authority about how to run a police operation? Perhaps to you and I it might, but I think the Supreme Court is very clear that you have to look to state law. And I think they're also very clear in saying that this will not be a factual decision to be made by a jury after discovery, but rather look to state law, and that will guide you. Because from the context, certainly, of the Supreme Court, and certainly from your perspective, you have all different possibilities. Well, does that amount to a pass to townships then? Because no matter how egregious the behavior of their police chiefs, imagine, hypothetically, the most absurd bad actor in the office of police chief who is able to act in that capacity for a few months before it comes back to bite him and he gets canned. Is this an insurance policy for townships to say, hey, you can never get us for this guy's actions, because according to this statute, we're the final decision-maker, even though we have nothing to do with making tactical decisions. The Supreme Court spoke to that in the Perpotnick case, where they stated that there are safeguards against a municipality recognizing just that idea and shouldering off all responsibility to the worst officer in the police department. And they've noted that there's the ability to then come back under other theories and to attach liability to the municipality. So, yeah, what's that? What's the safeguard? Well, as noted at, let's see if I can find the, at 127. So this would be 485 U.S. at 112 at page 127, where they talk about certain principles will provide guidance. And in that situation where a municipality sloughs off all responsibility, that a plaintiff will be able to bring a claim under custom and usage against the municipality. Okay. Mr. Belwar, anything else? That's it. Thank you. No, I'm done. Mr. McComb. I will be very brief because it's late in the day and I don't want to overextend my welcome. But just, I think it's important to keep this case in context. Number one, Twombly and Iqbal serve a salutary purpose of eliminating plaintiffs who say, I did this and they violate my Fourth Amendment rights and I'm entitled. It really is, it's read in conjunction with Rule 8 to put the defendant on notice of the activity and to allow the court to make a determination as to plausibility. It does not require, in fact, Leatherman versus Terrence said, you don't have to plead 1983 actions with particularity. That's still case law from the United States Supreme Court. There's plenty to put them on notice as to what the claims are. Sure, but it does require, yeah, we're not at notice here. We're at plausibility, right? Right. How is this any different? I mean, imagine it this way. You have a plaintiff who comes in and says, the following three things happened to me, and the supervisor ordered it. And you could do that in any case, no matter what the course of events was, by saying, and the supervisor ordered it, you would be overcoming Iqbal by your argument, wouldn't you? You just recite what happened and then add those words, and he ordered it. No, and again, bad cases make bad law. This is such an unusual case because there is a summary judgment record. And if you look, it's set out in the appendix starting at A100. There are pages of recitations of deposition testimony as to the planning and implementation. But you've already told us that we can't look at that because we're looking at this on the basis of a motion to dismiss. The summary judgment record is not something that Judge Dalziel was going to be looking at, and by your own account, not something we should be looking at, right? Yes. Strictly speaking, yes, because it's an appeal from the granting of a motion to dismiss. But it formed the record in front of the court. And it certainly, at some point, it really becomes a game of, is the magic word used? Because there was testimony as to what was taking place. I don't believe that we would have to plead in the Third Amendment complaint all the facts, for example, as to how they planned it. And it goes on for paragraphs and paragraphs. Well, you may not have to plead all of them. The question is, didn't you have to plead enough of them to take it above the limit of, these are the things that happened to me, and he told him to? I mean, didn't you need to do something to move it beyond just that? With all due respect, but for what purpose? So that you would be able to demonstrate plausibility under Iqbal. That's the thing we're wrestling with here, is, I mean, if Iqbal didn't represent a sea change in how motions to dismiss were judged, this wouldn't be a case we would be wrestling with at all, right? Because this would be an irreversible error for the judge under Connolly versus Gibson to say, you're out. It's only because we've got Iqbal that we're dealing with the question of, is this plausible? Right. But informing the court's decision, he's already read the summary judgment motion, so he knows that there is a factual basis. Obviously, the defendants do. So I guess, for what purpose would we have to plead that type of particularity that the defendants are suggesting was necessary? It clearly is plausible, and if you read the deposition transcript, it's more than plausible. It's actually what took place. Could you focus on Donnelly and Springfield? I'm still uncertain about what you are saying in the complaint that- In all candor, it's a weaker case against them. They're there. It's shades of gray with respect to how much involvement a police officer on the scene has to have. I think there is- If you have a sentence that says Donnelly violated plaintiff's amendment rights, and that this plan, speaking of the chief's plan, used excessive force, et cetera, et cetera, you're not really saying what Donnelly did. You're saying it was the plan that he was a part of. Yeah, as I said, they were there. They were the ones supervising the execution. The courts have said it has to be more than somebody just a bystander. But if you are acquiescing in what is taking place, you are on the scene, the record, frankly, isn't very clear. I think it's sort of moving into the qualified immunity issue, what they did, and which is fact-based. I think the context is really what was pled. You had discovery in the case. Yes. You had depositions and interrogatories and so forth. Now, the same thing you said in response to my question about Donnelly can be said about Springfield. Yes. Although, again, the summary judgment record, as Judge Jordan pointed out, is not the same as the complaint itself. But the summary judgment record goes in some detail as to the level of involvement of all three of the officers. And again, just in ending, I'd like to say it's context. It's for what purpose are we required to plead these things. The plausibility, the court was aware of it. The court denied their most for summary judgment without prejudice. The defendants knew what the issues were because their people had sat through depositions. It was enough to put them on notice. With respect to the factual matters, the court just didn't reach them. The court dismissed them on things that I think are clearly erroneous. With respect to those issues, it should be sent back down. Great. Thank you very much, Mr. McComb. Thank you both for the excellent arguments. We'll take the case under advisement. And we will take a brief break.